## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

JOE BALTAS,
     *Plaintiff*,

v.

PAUL FRENIS, ET AL.,
     *Defendants.*

No. 3:18-cv-1168 (VAB)

## RULING AND ORDER ON MOTIONS IN LIMINE

In advance of trial, Joe Baltas ("Plaintiff") has filed seven motions *in limine*, ECF Nos. 327–33, and Warden Denise Dilworth, Deputy Wardens David Egan, and Kimberly Jones, Lieutenant Paul Frenis, Correctional Officers Ragauskas, Stephanie Gryken, LeFevre, Peralta, Guest, and McGoldrick, Counselor Supervisor Michael Calderon, and "LPC" Andrade (collectively, "Defendants") have filed two motions *in limine*, ECF Nos. 346 and 347.

In addition, Mr. Baltas has moved for a writ of habeas corpus permitting him to be physically present at trial. ECF No. 342.

The Court **GRANTS** Mr. Baltas's motion *in limine* to exclude evidence of his alleged misconduct after 2018, ECF No. 333.

The Court **GRANTS** Defendants' motions *in limine* to exclude the testimony of Mr. Marchant-Shapiro, ECF No. 346 and to exclude Mr. Mahoney's affidavit, ECF No. 347.

The Court **GRANTS in part and DENIES in part** Mr. Baltas's motion *in limine* to exclude evidence of his convictions, ECF No. 327. Defendants may introduce evidence that Mr. Baltas was convicted of felonies and the dates of his felony convictions on cross-examination. Defendants may not introduce any other details of Mr. Baltas's convictions, including the statutory name of the offenses and the length of his prison sentence.

The Court **DENIES** Mr. Baltas's motions *in limine* to admit Mr. Mahoney's affidavit, ECF No. 331, and to obtain photographic evidence, ECF No. 332

The Court **DENIES** without prejudice to renewal Mr. Baltas's motion for a writ of habeas corpus compelling his physical presence at trial, ECF No. 342, and his motion *in limine* to appear unrestrained, ECF No. 329. If closer to trial, Mr. Baltas wishes to present evidence that he no longer poses a security risk, he may renew his motion and the Court will hold a hearing on this issue. If he is not permitted to physically attend trial, the Court will allow Mr. Baltas to attend and testify at trial by videoconference.

The Court **DENIES** as moot Mr. Baltas's request to appear in alternate attire, ECF No. 328 and Mr. Baltas's motion *in limine* to designate Defendants as adverse witnesses, ECF No. 330.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background of this case and summarizes only the history that is relevant to these motions. *See* Ruling and Order on Mot. for Summ. J., ECF No. 306 at 3–14 (Sept. 29, 2023).

On March 5, 2024, Mr. Baltas filed seven motions *in limine*. Motion *in Limine* No. 1: to exclude evidence of convictions, ECF No. 327 ("MIL re convictions"); ECF No. 328, Motion *in Limine* No. 2: To allow him to appear in appropriate attire ("MIL re attire"); Motion *in Limine* No. 3: to allow him to appear before the jury unrestrained, ECF No. 329 ("MIL re restraints"); Motion *in Limine* No. 4: to designate named defendants as adverse witnesses, ECF No. 330 ("MIL re adverse witness"); Motion *in Limine* No. 5: to enter deceased witness Marcus Mahoney's sworn affidavit in lieu of testimony at trial, ECF No. 331 ("MIL re Mahoney Affidavit"); Motion *in Limine* No. 6: to produce color photos for jury and/or permit inspection

for photographing, ECF No. 332 ("MIL re photos"); Motion *in Limine* No. 7: to exclude evidence of post 2018 allegations of plaintiff's misconducts, ECF No. 333 ("MIL re misconduct").

On April 29, 2024, Mr. Baltas filed a petition for a writ of habeas corpus permitting him to attend his trial. Petition for Writ of Habeas Corpus, ECF No. 342 ("Mot. to Attend Trial").

On May 10, 2024, Defendants filed two motions *in limine*. Motion *in Limine* to Exclude Testimony of Andrew Marchant-Shapiro, ECF No. 346 ("D's MIL re Attorney Testimony"); Motion *in Limine* to Preclude Introduction of Marcus Mahoney Affidavit, ECF No. 347; Mem. of Law. In Support of MIL to Preclude Introduction of Marcus Mahoney Affidavit, ECF No. 347-1 ("D's MIL re Mahoney Affidavit").

On that same date, Defendants filed an objection to Mr. Baltas's motions *in limine*. Objection re Motions *in limine* ECF No. 348 ("Opp'n to MIL").

On May 24, 2024, Defendants filed an objection to Mr. Baltas's petition for writ of habeas corpus. ECF No. 355 ("Opp'n to Mot. to Attend Trial").

On May 31, 2024, Mr. Baltas filed a Reply to Defendants' Objection to his motions *in limine*. Reply to Response, ECF No. 362 ("MIL Reply")

On June 17, 2024, Mr. Baltas filed a Reply to Defendants' Objection to his petition for writ of habeas corpus. Response re Objection, ECF No. 367 ("Mot. to Attend Trial Reply").

## II.    STANDARD OF REVIEW

Motions *in limine* provide district courts with the opportunity to rule in advance of trial on the admissibility and relevance of certain forecasted evidence. *See Luce v. United States*, 469 U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). "A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in*

*limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce*, 469 U.S. at 41 n.4).

A court should exclude evidence on a motion *in limine* only if the evidence is "clearly inadmissible on all potential grounds." *Levinson v. Westport Nat'l Bank*, No. 3:09-cv-1955 (VLB), 2013 WL 3280013, at *3 (D. Conn. June 27, 2013) (internal quotation marks omitted). The court also retains discretion to "reserve judgment until trial, so that the motion is placed in the appropriate factual context." *In re Methyl Tertiary Butyl Ether (MTBE) Prods. Liab. Litig.*, 643 F. Supp. 2d 471, 476 (S.D.N.Y. 2009) (internal quotation marks omitted).

## III.   DISCUSSION

Mr. Baltas has filed several motions seeking to (1) allow his presence at trial, and to attend trial in appropriate attire and unrestrained, (2) exclude evidence of his convictions, (3) exclude evidence of his alleged misconduct after 2018, (4) introduce an affidavit from a deceased witness at trial, and (5) obtain photographs to be used as evidence at trial.

Defendants have moved to exclude the affidavit from the deceased witness that Mr. Baltas proposes to introduce, and to preclude testimony from Plaintiff's standby counsel.

The Court will address each issue in turn.

### A.   Mr. Baltas' Presence at Trial

A federal court may issue a writ of habeas corpus *ad testificandum* to compel a custodian to produce a prisoner for appearance in court. *Atkins v. City of New York*, 856 F. Supp. 755, 757 (E.D.N.Y. 1994); 28 U.S.C. § 2241(c)(5); 28 U.S.C. § 1651(a). "In determining whether it should issue a writ of habeas corpus *ad testificandum*, the district court considers such factors as whether the prisoner's presence will substantially further the resolution of the case, the security risks presented by the prisoner's presence, the expense of the prisoner's transportation and

safekeeping, whether the suit can be stayed until the prisoner is released without prejudice to the cause asserted and whether reasonable alternatives to the inmate's attendance exist which would satisfy the needs of the litigants." *Twitty v. Ashcroft*, 712 F. Supp. 2d 30, 32 (D. Conn. 2009). "As compliance with writs of habeas corpus *ad testificandum* may be very costly, the district courts should consider alternatives to reduce the burdens compliance imposes, including: using a prisoner's deposition in place of his trial testimony, arranging the trial schedule to reduce the amount of time a prisoner must be away from his place of confinement, and, in some cases, taking testimony at the prison, or transferring the place of trial to the federal courthouse nearest the state prison." *Rivera v. Santirocco*, 814 F.2d 859, 864 n.8 (2d Cir. 1987). "The decision to issue a writ of habeas corpus *ad testificandum* is committed to the sound discretion of the district court." *Atkins*, 856 F. Supp. at 757.

"It is well settled that a plaintiff prisoner does not have a constitutional right to be physically present at the jury trial of his civil rights claim." *Twitty*, 712 F. Supp. 2d at 31. "In assessing an inmate's request to attend a civil action, 'the trial court must weigh the interest of the plaintiff in presenting his testimony in person against the interest of the state in maintaining the confinement of the plaintiff-prisoner.'" *Id.* (quoting *Thornton v. Snyder*, 428 F.3d 690, 697 (7th Cir. 2005)).

"In civil as well as criminal cases, the right to a fair trial is fundamental. In either type of case, the court must be alert to avoid practices that may undermine the fairness of the factfinding process." *Davidson v. Riley*, 44 F.3d 1118, 1122 (2d Cir. 1995) (citations omitted). "Forcing a party to appear at a jury trial in manacles and other shackles may well deprive him of due process unless the restraints are necessary." *Id.*; *see also Illinois v. Allen*, 397 U.S. 337, 344 (1970) ("no person should be tried while shackled and gagged except as a last resort. Not only is

it possible that the sight of shackles and gags might have a significant effect on the jury's feelings about the defendant, but the use of this technique is itself something of an affront to the very dignity and decorum of judicial proceedings that the judge is seeking to uphold."); *Davidson*, 44 F.3d at 1122 ("Circuit courts have recognized that the concerns expressed in *Allen* are applicable to parties in civil suits as well."). "That does not mean, however, that district courts may never employ enhanced security measures. To the contrary, under certain circumstances, even the presumptively prejudicial measure of shackling an incarcerated plaintiff might not deprive the plaintiff of a fair trial." *Anthony M. v. Wright*, 771 F. App'x 89, 90 (2d Cir. 2019) (summary order); *see also DeLeon v. Strack*, 234 F.3d 84, 88 (2d Cir. 2000) (noting that the Second Circuit "[has] approved the use of restraints when the trial court independently exercises its discretion in ordering the restraints to maintain safety and security, imposes no greater restraints than are necessary and takes steps to minimize the prejudice flowing from the restraints[,]" and concluding that "DeLeon's due process rights were not violated when he was handcuffed during trial.")

Mr. Baltas has filed a motion for a writ of habeas corpus to allow his physical presence at trial so that he may testify and present his case, *see* Mot. to Attend Trial, ECF No. 342, as well as motions *in limine* allowing him, if present, to be unrestrained and to appear in civilian attire. *See* MIL re restraints, ECF No. 329; MIL re attire, ECF No. 328.

Defendants argue that the Connecticut Department of Correction ("CT DOC") "has significant safety concerns with transporting and, if necessary, temporarily housing [Mr. Baltas] in Connecticut." Opp'n to Mot. to Attend Trial 4. Defendants submitted a declaration from David Snyder, the Director of Offender Classification and Population Management and Director of Sentence Calculation and Interstate Management at the Connecticut Department of Correction

("CT DOC"). Decl. of David Synder, ECF No. 355-2 (May 24, 2024) ("Synder Decl."). Mr.

Snyder's declaration indicates that Mr. Baltas has several pending cases stemming from his

alleged attacks on correctional officers, including for an incident that occurred on August 22,

2023, where Mr. Baltas allegedly assaulted two correctional officers with a filed down

toothbrush, and one officer was allegedly stabbed in the neck. Synder Decl. ¶ 11–12. As of May

2024, Mr. Baltas received 41 disciplinary reports since the beginning of 2024, and has been

found with items such as bent razors and a sharpened toothbrush as recently as February 2024

and April 2024. Synder Decl. ¶ 14–15, 20. Mr. Synder further indicates that Mr. Baltas

threatened to stab or kill DOC staff, and has done so in the past, including when being

transported for a court appearance on September 12, 2019. Synder Decl. ¶ 16, 18. Defendants

argue that Mr. Baltas may participate in his trial through videoconferencing as an alternative to

his presence in person. Opp'n to Mot. to Attend Trial at 10.

In reply, Mr. Baltas requests a hearing to challenge Mr. Synder's credibility, and asserts

that during a April 5, 2024 status conference, in another case in this District (*Baltas v. Erfe et. al*,

No. 3:19-cv-1820 (MPS)), the Office of the Attorney General and CT DOC represented that Mr.

Baltas would be allowed to attend his civil trial. Mot. to Attend Trial Reply at 1, 3. Mr. Baltas

also asserts that under Conn. Gen. Stat. §§ 18-102 and 18-106, the Commissioner of Corrections

is required to transport inmates to physically attend court proceedings in Connecticut. *Id.* at 4.

Mr. Baltas also argues that there is "no meritorious security concern in [his] attending his trial"

and that "there has never [been] even so much as an accusation of [him] engaging in an incident

or misconduct in any transport." *Id.* at 5.

The Court disagrees, at least in part.

As a plaintiff in a civil case, Mr. Baltas has no constitutional or statutory right to be physically present at his Connecticut trial. *Twitty*, 712 F. Supp. 2d at 31 ("It is well settled that a plaintiff prisoner does not have a constitutional right to be physically present at the jury trial of his civil rights claim."). Contrary to Mr. Baltas's assertion, Connecticut General Statutes §§ 18-102 and 18-106 merely permit interstate transportation of inmates among states that are part of the Interstate Corrections Compact, and do not mandate that prisoners be produced for their civil trials.[1] *See* Conn. Gen. Stat. § 18-102 ("The duly accredited officers of the sending state shall be permitted to transport inmates pursuant to this compact through any and all states party to this compact without interference."); Conn. Gen. Stat. § 18-106 (same).

Here, while Mr. Baltas undoubtedly has a significant interest in his physical presence at trial to present his case and provide testimony, the CT DOC has raised serious safety concerns and cited several incidents of alleged prior assaults on DOC staff, including during transport to court proceedings. Though Mr. Baltas challenges this evidence, courts in this District have previously relied on declarations of correctional officials to find significant safety concerns that outweigh an inmate's interest in physically attending his civil trial. *See Twitty*, 712 F. Supp. 2d at 33 (relying on declarations of Chief Deputy U.S. Marshal for the District of Connecticut and Complex Captain at the Federal Correctional Complex in Florence, Colorado to determine that "[o]n the record before the court, the court finds that expense and security concerns outweigh the plaintiff's interest in physically appearing at trial, particularly in light of the availability of a reasonable alternative, that of having the plaintiff appear by videoconference.")

---

[1] In his reply, Mr. Baltas cites to a case inapplicable to this one, where the prisoner required to be transported had a state statutory right to be present as the natural father in a neglect petition, and thus, because the Commissioner of Corrections had the jurisdiction to transport him, the Commissioner was required to do so. *In re Sheryl S.*, 1991 WL 61396, at *1 (Conn. Super. Ct. Apr. 12, 1991) ("Under our Rules of Practie [sic], Rule 1023 makes a parent a legally necessary party to a neglect petition, and Rule 1041 requires the presence of all necessary parties, that notice be found, and that right to counsel and the right to remain silent and other due process rights are to be explained by the court.") (unpublished opinion).

Accordingly, the Court will deny without prejudice to renewal Mr. Baltas's motion for a writ of habeas corpus compelling his physical presence at trial, ECF No. 342, and his motion to appear unrestrained, ECF No. 329. If closer to trial, Mr. Baltas wishes to present evidence that he no longer poses a security risk, he may renew these motions and the Court will hold a hearing on this issue. If he is not permitted to physically attend trial, the Court will allow Mr. Baltas to attend and testify at trial by videoconference.

The Court does not provide inmates with alternative attire for their civil trials. The Court, however, neither requires Mr. Baltas to appear in prison attire nor prevents him from appearing in alternate clothing, should he arrange to do so. *Cf. United States v. Henry*, 47 F.3d 17, 22 (2d Cir. 1995), *cert. denied*, 515 U.S. 1110 (1995) (In the criminal context, "[a] defendant may not be compelled to appear before the jury in clothing that is clearly identifiable as prison issue. We see no compulsion, as the court did not affirmatively prevent Henry from wearing civilian clothing, but simply refused to excuse Henry's failure to make proper arrangements despite receiving ample notice and opportunity." (citation omitted)).

Accordingly, the Court will deny as moot Mr. Baltas's request to appear in alternate attire, ECF No. 328.

### B.  The Admissibility of Prior Convictions

"Rule 609(a)(1) allows prior convictions to be used for impeachment purposes where the 'crime was punishable by death or imprisonment in excess of one year,' subject to the balancing test of Rule 403." *Martino v. Korch*, 131 F. Supp. 2d 313, 315 (D. Conn. 2000); Fed. R. Evid. 609(a)(1)(A) ("evidence of a criminal conviction . . . for a crime that, in the convicting jurisdiction, was punishable by death or by imprisonment for more than one year. . . must be admitted, subject to Rule 403[.]"). Rule 609(a) "also incorporates Fed. R. Evid. 403, and requires

the Court to balance whether the probative value of the evidence is 'substantially outweighed by the danger of unfair prejudice, confusion, or waste of time.' When proceeding through the Rule 403 analysis, courts consider the following factors: '(1) the impeachment value of the crime, (2) the remoteness of the prior conviction, (3) the similarity between the past crimes and the conduct at issue, and (4) the importance of the credibility of the witness.'" *Franko v. Farrell*, No. 3:17-CV-01558 (RMS), 2019 WL 1772400, at *3 (D. Conn. Apr. 23, 2019) (quoting *Daniels v. Loizzo*, 986 F. Supp. 245, 250 (S.D.N.Y. 1997)). "Although all of these factors are relevant, '[p]rime among them is [the first factor, *i.e.*] whether the crime, by its nature, is probative of a lack of *veracity*.'" *United States v. Brown*, 606 F. Supp. 2d 306, 312 (E.D.N.Y. 2009) (quoting *U.S. v. Ortiz*, 553 F.2d 782, 784 (2d Cir.1977) (alterations and emphasis in original).

Rule 609(a)(1) "presumes that all felonies are at least somewhat probative of a witness's propensity to testify truthfully," although "all Rule 609(a)(1) felonies are not equally probative of credibility[.]" *United States v. Estrada*, 430 F.3d 606, 617 (2d Cir. 2005). In *Estrada*, the Second Circuit discussed that while certain crimes, such as "crimes that involve evasions of responsibility or abuse of trust," rank "high on the scale of probative worth on credibility," for crimes "ranking low on that scale, including crimes of violence," which can include "particularly depraved and offensive acts, such as wanton violence or sexual immorality, the jury is likely to draw the prejudicial inference that the witness is a bad person while at the same time the jury may derive little probative value from the conviction since these crimes say little about credibility[.]" *Id*. at 618 (quoting 28 Wright & Gold § 6134 at 232–33).

In addition, Rule 609(b) places a limitation on the use of evidence of a conviction to impeach a witness when "more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is later." Fed. R. Evid. 609(b).  As a result, Rule

609(b)'s limitation is inapplicable where the witness is still incarcerated for the conviction. *See Blake v. Coughlin*, 205 F.3d 1321 (2d Cir. 2000) (finding that "evidence of [plaintiff's] crime was not excludable under Rule 609(b) because [he] is still incarcerated").

Mr. Baltas has filed a motion *in limine* to exclude evidence of his prior convictions. *See* MIL re convictions, ECF No. 327.

Defendants argue that they "seek to impeach plaintiff's credibility by disclosing only the statutory names of some of plaintiff's many crimes and the other 'essential facts.'" Opp'n to MIL at 4 (citing *Estrada*, 430 F.3d at 615, 616). Defendants further state that "[s]pecifically, [they] would use the statutory name of a few of plaintiff's many crimes, the date of disposition, and the sentenced imposed including its end date." *Id.* at 6. Defendants claim that this evidence will "demonstrate that plaintiff is has no incentive to testify truthfully or follow the rule of law." *Id.* at 9.

In reply, Mr. Baltas states that his prior convictions are more than ten years old, and therefore must be excluded under Federal Rules of Evidence 403, 404, and 609. MIL Reply at 6. Mr. Baltas further argues that his prior convictions are inadmissible for impeachment purposes, because such convictions are irrelevant "to his claims [that] defendants violated his constitutional rights." *Id*. at 6 (quoting *Jolly v. Troisi*, No. 92 CIV. 5332 (DAB), 2000 WL 620304, at *2 (S.D.N.Y. May 11, 2000)).

Because Mr. Baltas is currently incarcerated because of his convictions, the limitation in Rule 609(b) is inapplicable, as the ten year period would run from the date of his release, not the date of his conviction. *See* Fed. R. Evid. 609(b) ("This subdivision (b) applies if more than 10 years have passed since the witness's conviction or release from confinement for it, whichever is

later."). As a result, the Court will consider the admissibility of Mr. Baltas's convictions under Rule 609(a).

Under Rule 609(a), the Court must admit the statutory name of Mr. Baltas's conviction, its date, and the sentence imposed unless the Court "determines that the probative value of that evidence 'is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.'" *Estrada*, 430 F.3d at 620–21 (quoting Fed. R. Evid. 403). "This determination is left to the sound discretion of the district court." *Id.* at 621.

As the plaintiff in this case, the credibility of Mr. Baltas's testimony is of great importance, and the parties do not dispute that the conduct at issue here is unrelated to Mr. Baltas's prior convictions, which weighs against potential prejudice. The underlying nature of Mr. Baltas's convictions for murder and assault, however, are highly prejudicial and have minimal probative value to his character for truthfulness. *See Estrada*, 430 F.3d at 618 (adopting the reasoning of the "'rule of thumb' . . . that 'convictions which rest on dishonest conduct relate to credibility whereas those of violent or assaultive crimes generally do not.'" (citing *Gordon v. United States*, 383 F.2d 936, 940 (D.C. Cir. 1967)); *United States v. Walker*, 974 F.3d 193, 207 (2d Cir. 2020) ("This rationale is consistent with our precedent establishing that violent crimes, however abhorrent, often are not crimes of dishonesty, and may not meaningfully reflect on a witness's truthfulness."); *United States v. Antoine*, No. 23-CR-305-2 (NSR), 2024 WL 4557435, at *5 (S.D.N.Y. Oct. 23, 2024) ("Crimes of violence are often unduly prejudicial. . . . Here, there is no apparent probative value in allowing the Defendant to cross-examine Cooperating Witness-1 on account of [a felony conviction], as it has marginal relevance to the current case and does not bear on Cooperating Witness-1's veracity."). Thus, the underlying facts and statutory name of

Mr. Baltas's convictions have minimal impeachment value, and a high likelihood of undue prejudice, which weighs against their admission.

The length of the sentence Mr. Baltas received, however, is a closer question. Defendants argue that Mr. Baltas's life sentence may be relevant to his credibility. *See* Opp'n to MIL at 9. Permitting Defendants to introduce the length of his sentence, however, may lead to speculation about the underlying nature of his convictions, and thereby raises similar concerns of undue prejudice and confusing the issues. *See Smith v. Perez*, No. 3:19-CV-1758 (VAB), 2023 WL 4540439, at *4 n.4 (D. Conn. July 14, 2023) ("The length of Mr. Smith's sentence, while often appropriate, may be unduly prejudicial in this context, and lead to unnecessary speculation by the jury about the nature of the underlying offense. As a result, the Court will exercise its discretion under Rule 403 to preclude inquiry into that information as well.").

Balancing the various factors here, the Court will allow Defendants to present evidence on cross-examination that Mr. Baltas was convicted of felonies and the dates of his felony convictions. The Court precludes Defendants from introducing any other details of Mr. Baltas's convictions, including the statutory name of the offenses and the length of his prison sentence. *See Giles v. Rhodes*, No. 94 CIV. 6385(CSH), 2000 WL 1510004, at *1 (S.D.N.Y. Oct. 10, 2000) ("[N]umerous courts have exercised their discretion to admit evidence of the fact that a witness has been convicted of a felony while barring evidence of the underlying details of the offense"); *Day v. Milling*, No. 3:95 CV 1704 JGM, 2000 WL 435430, at *3 (D. Conn. Feb. 22, 2000) ("[D]efense counsel is limited to elicitation of the crime charged, the date, and the disposition and it is error to elicit any further information for impeachment purposes." (citations and internal quotation marks omitted)); *Smith,* 2023 WL 4540439, at *4 (D. Conn. July 14, 2023) ("[I]n order to strike the proper balance between the crime's admissibility under Rule 609(a) and

its prejudicial effect . . . the Court will permit Defendants to introduce evidence related to the fact that Mr. Smith was convicted of a felony, and the date of the felony conviction. The Court will preclude Defendants from introducing any other details of Mr. Smith's conviction, including the essential elements, the statutory name of the offense, and the length of his prison sentence." (citation omitted)); *Olutosin v. Gunsett*, No. 14-CV-00685 (NSR), 2019 WL 5616889, at *14 (S.D.N.Y. Oct. 31, 2019) ("[G]iven the relatively minimal probative value of murder on veracity compared to the unfair bias it may create, as well as general the remoteness of the conviction, the Court will limit impeachment to the fact that he has a conviction and the sentence it entailed."); *Daniels v. Loizzo*, 986 F. Supp. 245, 251 (S.D.N.Y. 1997) ("The Court will offset [the] danger [of unfair prejudice] by limiting Defendants' use of the conviction to the fact and date of the conviction." (citations omitted)).

Accordingly, the Court will grant in part and deny in part Mr. Baltas's motion *in limine* to exclude evidence of his convictions, ECF No. 327.

### C. The Admissibility of Post-2018 Misconduct

Federal Rule of Evidence 404(b)(1) prohibits the admission of evidence of a "crime, wrong, or act" to "prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Fed. R. Evid. 404(b)(1). Such evidence "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident," Fed. R. Evid. 404(b)(2), however, so long as it is "relevant to some disputed issue in the trial and satisfies the probative-prejudice balancing test of Fed. R. Evid. 403." *United States v. Brennan*, 798 F.2d 581, 589 (2d Cir. 1986) (internal quotations and citations omitted). "A trial court has 'broad discretion' in decisions

relating to extrinsic acts." *Berkovich v. Hicks*, 922 F.2d 1018, 1022 (2d Cir. 1991) (quoting *Ismail v. Cohen*, 899 F.2d 183, 188 (2d Cir.1990)).

Mr. Baltas seeks to exclude evidence related to his alleged misconduct after 2018, and claims that such evidence is "irrelevant to this action, unfairly prejudicial as untried criminal misconduct, and under his Fifth Amendment Rights." MIL re misconduct, ECF No. 333.

Defendants do not specifically address this in their motion, although Defendants argue that, like the convictions, they are entitled to present this to impeach Mr. Baltas's credibility under Federal Rules of Evidence 609(1)(A). Opp'n to MIL at 4.

The Court disagrees.

Disciplinary records are not convictions, and therefore Rule 609(a) is inapplicable. *See* Fed. R. Evid. 609(a) ("The following rules apply to attacking a witness's character for truthfulness by evidence of a criminal conviction").

Moreover, while disciplinary reports related to the incidents alleged in Mr. Baltas's complaint are certainly relevant to this action, any disciplinary reports after the filing of Mr. Baltas's Complaint on July 16, 2018 are irrelevant to the parties' claims and defenses, and is highly likely to confuse the issues, mislead the jury, and cause unfair prejudice. *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."). Nor is this evidence related to another permissible purpose under Rule 404, "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(2); *see also Hynes v. Coughlin*, 79 F.3d 285, 290–91 (2d Cir. 1996) ("[W]here there is no tenable basis for contending that there was an issue such as intent or

15

knowledge, it is error to admit an inmate's disciplinary record to support the inference that he had a 'penchant for violent conduct.'" (citation omitted)).

Accordingly, the Court will grant Mr. Baltas's motion *in limine* to exclude evidence of his misconduct after 2018, ECF No. 333.

### D.  The Admissibility of the Mahoney Affidavit

Under Rule 804 of the Federal Rules of Evidence, "[a] declarant is considered to be unavailable as a witness if the declarant . . . cannot be present or testify at the trial or hearing because of death." Fed. R. Evid. 804(a)(4). A party may provide former testimony of unavailable witnesses so long as such testimony "was given as a witness at a trial, hearing, or lawful deposition" and "is now offered against a party who had . . . an opportunity and similar motive to develop it by direct, cross-, or redirect examination." Fed. R. Evid. 804(b)(1).

In addition, under Rule 807, inadmissible hearsay may nonetheless be admitted upon providing notice to the adverse party if:

> (1) the statement is supported by sufficient guarantees of trustworthiness—after considering the totality of circumstances under which it was made and evidence, if any, corroborating the statement; and

> (2) it is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts.

Fed. R. Evid. 807(a).

This "residual exception" is "used very rarely, and only in exceptional circumstances." *United States v. Ulbricht*, 858 F.3d 71, 128 (2d Cir. 2017), *abrogated on other grounds by Carpenter v. United States*, 585 U.S. 296 (2018) (quoting *Parsons v. Honeywell, Inc.*, 929 F.2d 901, 907 (2d Cir. 1991)).

Mr. Baltas seeks to introduce the affidavit of a deceased witness, Marcus Mahoney. ECF No. 331.

The Defendants wish to preclude this affidavit, arguing that "[a]lthough [Mr. Mahoney] is deceased and therefore unavailable, his affidavit was not testimony given 'at a trial, hearing, or lawful deposition,' and thus is inadmissible hearsay. D's MIL re Mahoney Affidavit, ECF No. 347-1 (citing Fed. R. Evid. 804(b)(1)(A)).

The Court agrees.

Because Mr. Baltas has represented to the Court that Mr. Mahoney is now deceased, Mr. Mahoney is an unavailable witness. Mr. Baltas, however, may not introduce Mr. Mahoney's affidavit, because this testimony is not sworn testimony "given . . . at a trial, hearing, or lawful deposition," nor were Defendants given the opportunity to cross-examine Mr. Mahoney at the time the statements were made. Fed. R. Evid. 804(b)(1).

Likewise, Mr. Baltas has not demonstrated that Mr. Mahoney's declaration "is supported by sufficient guarantees of trustworthiness," *see* Fed. R. Evid. 807(a), and thus he fails to show "exceptional circumstances" warranting the application of the residual hearsay exception. *See Ulbricht*, 858 F.3d at 128.

Accordingly, the Court will deny Mr. Baltas's motion *in limine* to admit Mr. Mahoney's affidavit, ECF No. 331, and will grant the Defendants' motion *in limine* to exclude the affidavit, ECF No. 347.

### E.  The Examination of an Adverse Witness

Under Rule 611 of the Federal Rules of Evidence, "[o]rdinarily, the court should allow leading questions: . . . when a party calls . . . an adverse party, or a witness identified with an adverse party." Fed. R. Evid. 611(c)(2)

Mr. Baltas has moved to designate the Defendants as adverse witnesses to the plaintiff, and to permit him to ask leading questions. MIL re adverse witness, ECF No. 330.

The Court agrees.

Because the Defendants are an "adverse party", Mr. Baltas already may use leading questions on their direct examinations, subject to the discretion of the Court. The propriety of such questions will be determined at trial when the Court can evaluate such questions in their proper context. *See Sanders v. New York City Hum. Res. Admin.*, 361 F.3d 749, 757 (2d Cir. 2004) ("[T]he language of Federal Rule of Evidence 611(c) expressing a preference for non-leading questions is only precatory and, that generally trial judges are afforded a large degree of discretion in overseeing the examination of witnesses."); *see also Bencosme v. Metro-N. R.R. Co.*, No. 3:22-CV-01430, 2024 WL 4198325, at *3 (D. Conn. Sept. 16, 2024) ("The court has the discretion to allow (or to prevent) leading questions posed to an adverse party.").

Accordingly, the Court will deny as moot the motion *in limine* to designate Defendants, who are already an adverse party to Mr. Baltas, as adverse witnesses, ECF No. 330.

### F.  The Discovery of Color Photographs

Mr. Baltas has moved to produce color photographs from Garner Incident Reports and to permit the inspection and photographing of the units at Garner where he has been housed. MIL re photos, ECF No. 332 (citing Fed. R. Civ. P. 34(a)(2)).

Defendants argue that fact discovery in the case closed on October 1, 2020, and Mr. Baltas may not make belated discovery requests through a motion *in limine*.

In response, Mr. Baltas states that he did request certain of these photographs before the close of discovery, but that he was given black and white photographs which are indiscernible.

MIL Reply at 4. Mr. Baltas claims that he submitted multiple requests to counsel to provide color photographs, but that counsel refused. *Id*. at 4–5.

While Mr. Baltas filed this request as a motion *in limine*, because he seeks to obtain evidence rather than to preclude the introduction of certain evidence, the Court construes his motion as a motion to compel. *See Luce*, 469 U.S. at 40 n.2 ("'*In limine*' has been defined as '[o]n or at the threshold; at the very beginning; preliminarily.' We use the term in a broad sense to refer to any motion, whether made before or during trial, to exclude anticipated prejudicial evidence before the evidence is actually offered." (quoting Black's Law Dictionary 708 (5th ed. 1979)). "[A] party seeking to file a motion to compel after discovery has closed must. . . establish good cause" for this request. *Gucci Am., Inc. v. Guess?, Inc.*, 790 F. Supp. 2d 136, 139 (S.D.N.Y. 2011) "Where a party is aware of the existence of documents or other information before the close of discovery and propounds requests after the deadline has passed, those requests should be denied." *Id.*

Moreover, while Mr. Baltas claims that the photographs Defendants provided were insufficient, and must be corrected under Federal Rule of Evidence 26(e)(1), Mr. Baltas does not explain his delay in moving to compel the photographic evidence he seeks more than four years after the close of discovery. *See* Order denying 211 Plaintiff's Motion to Compel Discovery Materials, ECF No. 212 ("Pursuant to the Court's Revised Scheduling Order, Dkt. 92, discovery deadline was October 1, 2020 -- more than one year ago. The Court permitted a brief extension for the limited purpose of resolving an issue that arose due to the COVID-19 pandemic and Mr. Baltas' location, and this issue was resolved by October 14, 2020, thereby concluding discovery. Mr. Baltas was represented by counsel from the beginning of the case, through the entirety of the discovery process, and during settlement conferences that occurred from January through August

2021."). Despite being represented by standby counsel and filing a motion to compel on March 2, 2022, ECF No. 211, the Court is not aware of any prior requests from Mr. Baltas to obtain the evidence he now seeks.

Accordingly, because Mr. Baltas fails to explain his significant delay in seeking this evidence or otherwise show "good cause" to order additional discovery in this matter, the Court will deny his motion to obtain additional evidence after the close of discovery. *See, e.g., Richardson v. City of New York*, 326 F. App'x 580, 582 (2d Cir. 2009) (summary order) ("[T]he district court did not abuse its discretion in denying plaintiff's motion to compel discovery" as untimely, where such motion had been "filed over one month after the close of discovery"); *Owen v. No Parking Today, Inc.*, 280 F.R.D. 106, 112 (S.D.N.Y. 2011) ("A party ordinarily must file a motion to compel *before* the close of discovery and if it fails to do so, the motion will be deemed untimely." (emphasis in original)) (collecting cases); *see also Wills v. Amerada Hess Corp.*, 379 F.3d 32, 41 (2d Cir. 2004) (acknowledging "the district court's broad discretion to direct and manage the pre-trial discovery process" (citing *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir.2003)).

### G.  The Admissibility of the Testimony of Plaintiff's Former Counsel

Under Local Civil Rule 83.13(a), "[a] lawyer shall not accept employment in contemplated or pending litigation if he or she knows or it is obvious that he or she or a lawyer in the same firm ought to be called as a witness," unless the testimony (1) "will relate solely to an uncontested matter," (2) "will relate solely to a matter of formality and there is no reason to believe that substantial evidence will be offered in opposition to the testimony" or (3) "will relate solely to the nature and value of the legal services rendered in the case by the lawyer or the law firm to the client." D. Conn L Civ. R. 83.13(a). The Court has the discretion, however, to "permit

a lawyer to act as an advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness." D. Conn L Civ. R. 83.13(c).

In his trial memorandum, Mr. Baltas named his attorney and standby counsel, Andrew Marchant-Shapiro, as a potential witness who "may be called to verify his notarization of deceased witness Marcus Mahoney's declaration and his communications with correctional officials."

Defendants have moved to exclude the testimony of Plaintiff's attorney and standby counsel, Andrew Marchant-Shapiro, and argue that the proffered testimony regarding conversations with Department of Correction employees would be inadmissible hearsay, and that Defendants "would be unable to fully confront the testimony" because of Mr. Marchant-Shapiro's role as counsel. D's MIL re Attorney Testimony, ECF No. 346.

The Court agrees, at least in part.

As discussed above, Marcus Mahoney's declaration is inadmissible, and thus the only relevant testimony Mr. Marchant-Shapiro would provide relates to "his communications with correctional officials." To the extent Mr. Baltas wishes for Mr. Marchant-Shapiro to testify as to "the truth of the matter asserted" in statements that correctional officers made to him during those conversations, this would be impermissible hearsay. *See United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013) ("The Federal Rules of Evidence define hearsay as a declarant's out-of-court statement 'offer[ed] in evidence to prove the truth of the matter asserted in the statement.' Hearsay is admissible only if it falls within an enumerated exception." (quoting Fed. R. Evid. 801(c) then citing Fed. R. Evid.802) (alteration in original)). To the extent that Mr. Baltas wishes to introduce this for any other purpose, under this District's Local Rules, Mr. Marchant-Shapiro, as Mr. Baltas's counsel, may not testify unless his testimony relates to an "uncontested matter,"

"solely to a matter of formality" that is unlikely to be opposed, or "solely to the nature and value of the legal services" he provided. D. Conn L Civ. R. 83.13(a). As a result, a more appropriate mechanism for Mr. Baltas to introduce such evidence would be through a stipulation to uncontested facts—such as, for example, a stipulation that Mr. Marchant-Shapiro spoke with a particular officer on a particular date—rather than live testimony.

Accordingly, because of the risk of impermissible hearsay, and the availability of more appropriate means to introduce admissible evidence, such as through a stipulation, the Court will grant Defendants' motion to exclude the testimony of Mr. Marchant-Shapiro, ECF No. 346.

## IV.    CONCLUSION

For the foregoing reasons, the Court **GRANTS** Mr. Baltas's motion *in limine* to exclude evidence of his alleged misconduct after 2018, ECF No. 333.

The Court **GRANTS** Defendants' motions *in limine* to exclude the testimony of Mr. Marchant-Shapiro, ECF No. 346 and to exclude Mr. Mahoney's affidavit, ECF No. 347.

The Court **GRANTS in part and DENIES in part** Mr. Baltas's motion *in limine* to exclude evidence of his convictions, ECF No. 327. Defendants may introduce evidence that Mr. Baltas was convicted of felonies and the dates of his felony convictions on cross-examination. Defendants may not introduce any other details of Mr. Baltas's convictions, including the statutory name of the offenses and the length of his prison sentence.

The Court **DENIES** Mr. Baltas's motions *in limine* to admit Mr. Mahoney's affidavit, ECF No. 331, and to obtain photographic evidence, ECF No. 332

The Court **DENIES** without prejudice to renewal Mr. Baltas's motion for a writ of habeas corpus compelling his physical presence at trial, ECF No. 342, and his motion *in limine* to appear unrestrained, ECF No. 329. If closer to trial, Mr. Baltas wishes to present evidence that

he no longer poses a security risk, he may renew his motion and the Court will hold a hearing on this issue. If he is not permitted to physically attend trial, the Court will allow Mr. Baltas to attend and testify at trial by videoconference.

The Court **DENIES** as moot Mr. Baltas's request to appear in alternate attire, ECF No. 328 and Mr. Baltas's motion *in limine* to designate Defendants as adverse witnesses, ECF No. 330.

**SO ORDERED** at New Haven, Connecticut, this 6th day of December, 2024.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE